# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------ )
MICHAEL H. HOLLAND,                                    )
MICHEAL BUCKNER, and JOSEPH R.             )
RESCHINI, as Trustees of the UNITED MINE    )     Case No.
WORKERS OF AMERICA 1974 PENSION           )
PLAN and PENSION TRUST,                            )     District Judge
                                                                          )
        Plaintiffs,                                                  )     Magistrate Judge
                                                                          )
v.                                                                        )
                                                                          )
PERSONAL REPRESENTATIVE OF THE           )
ESTATE OF ROBERT E. MURRAY, BRENDA   )
LOU MURRAY, CHAGRIN EXECUTIVE          )
OFFICES, LLC, and UNKNOWN                       )
CORPORATIONS, LIMITED LIABILITY           )
COMPANIES, LIMITED LIABILITY                  )
PARTNERSHIPS and SIMILAR ENTITIES         )
UNDER THE CONTROL OF ROBERT E.          )
MURRAY, BRENDA LOU MURRAY, OR           )
BOTH                                                                 )
                                                                          )
        Defendants.                                              )
                                                                          )
------------------------------------------------------------ )

## COMPLAINT

Plaintiffs Michael H. Holland, Micheal Buckner, and Joseph R. Reschini, as Trustees of

the 1974 Plan (collectively, the "1974 Plan"), through their undersigned counsel, hereby allege

as follows:

## PRELIMINARY STATEMENT

1.       This is an action under the Declaratory Judgment Act, 28 U.S.C. § 2201, as well

as the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*,

as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29

U.S.C. §§ 1381-1461.

2.     The United Mine Workers of America 1974 Pension Plan ("1974 Plan"), a multiemployer pension plan, and its Trustees bring this action against Robert Murray[1], former Chairman, President and CEO and primary equity owner of Murray Energy Holdings Company ("Murray Holdings"), his widow Brenda Lou Murray, Chagrin Executive Offices, LLC, an Ohio limited liability company, and unknown incorporated or unincorporated trades or businesses under the control of either Robert Murray, Brenda Lou Murray, or both ("Defendants").

3.     Multiemployer plans like the 1974 Plan are funded through collectively-bargained contributions from a number of unrelated employers, typically in the same industry.  In order to protect the retirees who are entitled to pensions from multiemployer plans, ERISA imposes "withdrawal liability" on employers who withdraw from, and cease making contributions to, multiemployer plans.

4.     Because of the critical importance of funding employee pensions, ERISA imposes this liability not only on the employer who is signatory to the collective bargaining agreement requiring contributions, but upon its entire multi-entity corporate group, all trades and businesses which are members of the signatory employer's "controlled group" under ERISA.  Each member of that controlled group is jointly and severally liable for the withdrawal liability.

5.     Several subsidiaries of Murray Holdings, which along with Murray Holdings have recently emerged from bankruptcy, were obligated to contribute to the 1974 Plan in order to provide pensions to their employees.

---

[1] Mr. Murray died on October 25, 2020, and thus, this action is brought against the personal representative of his estate ("Estate of Mr. Murray"). Though Mr. Murray is referred to throughout, all allegations herein are brought against the Estate of Mr. Murray, not the individual.

6.      Chagrin Executive Offices, LLC and the unknown incorporated and unincorporated trades or businesses owned or conducted as sole proprietorships or partnerships by defendants Mr. Murray and Mrs. Murray are under common control with these Murray Holdings subsidiaries and therefore are members of the same controlled group.

7.      This lawsuit seeks: (1) a declaratory judgment for the purpose of determining a question in actual controversy between the parties, as to the membership of the Defendants' unincorporated trades or businesses in the Murray Controlled Group; (2) to require Defendants Robert E. Murray and Brenda Lou Murray, as the owners of those trades or businesses, to meet their withdrawal liability obligations to the 1974 Plan; and (3) to require Defendant Chagrin Executive Offices, LLC and any unknown incorporated or unincorporated trades or businesses under the control of Robert Murray, Brenda Lou Murray, or both to meet their withdrawal liability obligations to the 1974 Plan.

8.      Defendants' trades or businesses are jointly and severally liable for ERISA withdrawal liability owed to the 1974 Plan pursuant to MPPAA Section 4201, 29 U.S.C. § 1381. Defendants Mr. and Mrs. Murray are personally liable for the liabilities of unincorporated trades or businesses that they own.

## JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction pursuant to ERISA Sections 502 and 4301, 29 U.S.C. §§ 1132(e) and 1451(c), and 28 U.S.C. § 1331.

10.     The Court has personal jurisdiction pursuant to Rule 4(k)(1) of the Federal Rules of Civil Procedure ("FRCP") and ERISA Sections 502(e) and 4301, 29 U.S.C. §§ 1132(e) and 1451(d).

11.     Venue is proper in this District pursuant to ERISA Sections 502(e) and 4301(d), 29 U.S.C. §§ 1132(e) and 1451(d), because the 1974 Plan maintains its primary place of business in the District of Columbia and is administered there.

12.     The Court is authorized to enter declaratory relief under 28 U.S.C. § 2201.

13.     Resolution of disputes as to whether a party is an "employer" as defined in 29 C.F.R. § 2510.3-55 must be resolved in federal district court.

## PARTIES

14.     The United Mine Workers of America 1974 Pension Trust is an irrevocable trust created pursuant to Section 302(c) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 186(c).

15.     The 1974 Plan is an employee pension benefit plan as defined by ERISA Section 3(2), 29 U.S.C. § 1002(2), as well as a multiemployer plan within the meaning of ERISA Section 3(37), 29 U.S.C. § 1002(37).  Together, these Plaintiffs are referred to as the "1974 Plan."  The 1974 Plan's principal place of business is located in the District of Columbia.

16.     The 1974 Plan is the industry-wide defined benefit pension plan established by the United Mine Workers of America and the Bituminous Coal Operators' Association, Inc. under the National Bituminous Coal Wage Agreement of 1974 (the "Wage Agreement").  The 1974 Plan provides pension benefits to more than 78,000 beneficiaries, who include retired coal miners and eligible surviving spouses, with an average pension of approximately $600 per month.

17.     Plaintiffs Michael H. Holland, Micheal Buckner, and Joseph R. Reschini (collectively, the "Trustees") are Trustees of the 1974 Plan.  The Trustees administer and conduct the business of the 1974 Plan at 2121 K Street, N.W., Washington, D.C. 20037.  The Trustees are the "plan sponsor" of the 1974 Plan within the meaning of Section 3(16)(B)(iii) of

ERISA, 29 U.S.C. § 1002(16)(B)(iii), and Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1).

The Trustees are fiduciaries of the 1974 Plan within the meaning of ERISA Section 3(21)(A), 29

U.S.C. § 1002(21)(A).  They bring this action in their fiduciary capacity on behalf the 1974 Plan

and its participants and beneficiaries.  The Trustees commence this action under ERISA

502(d)(1), 29 U.S.C. § 1132(d)(1), and further bring this action on behalf of 1974 Plan

participants and beneficiaries pursuant to ERISA §§ 502(a)(3)(B)(ii) and 4301(a)(1), 29 U.S.C.

§§ 1132(a)(3)(B)(ii) and 1451(a)(1).

 18. Defendant Estate of Robert Murray is the estate of Robert Murray ("Estate of Mr.

Murray"), who died on October 25, 2020. The Estate of Mr. Murray is liable for claims that

arose against Robert Murray ("Mr. Murray") during his lifetime. Brenda Lou Murray was

appointed the Fiduciary of the Estate of Mr. Murray on November 20, 2020 by Judge Davies of

the Belmont County Court of Common Pleas. Her address is listed as 47626 Meadowview Drive,

St. Clairsville, Ohio 43950.

 19. Mr. Murray was the former Chairman of the Board of Directors, President, and

Chief Executive Officer of Murray Holdings.  His primary residence was at 32 Cotswold Lane,

Moreland Hills, Ohio 44022 and/or 47626 Meadowview Drive, St. Clairsville, Ohio 43950. Mr.

Murray died on October 25, 2020.

 20. Defendant Brenda Lou Murray ("Mrs. Murray") is Robert Murray's widow.  Her

primary residence is at 32 Cotswold Lane, Moreland Hills, Ohio 44022 and/or 47626

Meadowview Drive, St. Clairsville, Ohio 43950.  She was employed by Murray Holdings as the

Assistant to the Chairman of the Board, Robert Murray, and worked in that capacity from

October 18, 1988 through the effective date of Murray Holdings' Chapter 11 plan, September 16,

2020, which was the date of Murray Energy's withdrawal from the 1974 Plan.  She was paid by

Ohio Valley Resources, Inc. a subsidiary of Murray Holdings.  She also participated in the management of Murray Holdings and the members of the Murray Controlled Group.

21.     Defendant Chagrin Executive Offices, LLC ("Chagrin") is a limited liability company organized in Ohio with its principal place of business located at 29525 Chagrin Boulevard, Suite 111, Pepper Pike, Ohio 44115. Mr. Murray created Chagrin on August 17, 2000, at all relevant times owned and controlled Chagrin, and acted as its Chief Executive Officer until his death.

## FACTUAL ALLEGATIONS

### I.     Summary of Facts

22.     Murray Holdings, together with its affiliates, was the largest privately-owned coal company in the United States, employing nearly 5,500 people, including approximately 2,400 active United Mine Workers of America members.  In October 2019, Murray Holdings and 198 affiliates filed petitions for Chapter 11 bankruptcy protection.  The resulting bankruptcy proceedings are *In re Murray Energy Holdings Co.*, 2:19-bk-56885 (Bank. S.D. Ohio 2020) (the "Bankruptcy Proceedings").

23.     Murray Holdings has two classes of stock, Class A (voting) shares and Class B (non-voting) shares.  Robert E. Murray owned 100% of the voting Class A shares and 19.2% of the non-voting Class B shares.  The Robert E. Murray 5/6/10 Trust holds the remaining 80.8% of the Class B shares.

24.     Murray Energy Corporation was a wholly-owned subsidiary of Murray Holdings and the ultimate parent of most of the group's operating subsidiaries.  It was among the Murray Holding affiliates that filed petitions for Chapter 11 bankruptcy protection in October 2019.

25.     Murray Energy Corporation and its operating subsidiaries are collectively referred to herein as "Murray Energy."

- 6 -

26.     Murray Energy owned and operated 13 active coal mines.

27.     Prior to filing for bankruptcy in October 2019, non-parties Murray Metallurgical Coal Properties, LLC and Murray Metallurgical Coal Properties II, LLC were wholly owned subsidiaries of Murray Energy Corporation.  Murray Metallurgical Coal Properties, LLC owned a 79% membership interest of Murray Metallurgical Coal Holdings, LLC, which in turn owned several other entities.[2]  Murray Metallurgical Coal Properties II, LLC owned a 47.2% membership interest of Javelin Investment Holdings, LLC, which in turn owned a 21% membership interest of Murray Metallurgical Coal Holdings, LLC.  These affiliated Murray Metallurgical entities, which are all Delaware corporations, are collectively referred to herein as "Murray Metallurgical."  Together, these corporate entities, along with Murray Energy and Murray Holdings, formed a controlled group for purposes of withdrawal liability, hereinafter "Non-Defendant Murray Controlled Group."  The Defendants, therefore, together with the Non-Defendant Murray Controlled Group, constitute the "Murray Controlled Group."

28.     Employers like Murray Energy that participate in multiemployer pension plans like the 1974 Plan contribute to those plans in accordance with contribution obligations established through collective bargaining.  Employer contributions and earnings on those contributions fund the benefits earned by plan participants and their beneficiaries.

29.     On September 16, 2020, Murray Energy withdrew from the 1974 Plan and thereby triggered withdrawal liability that the bankruptcy estate could not satisfy in full. Therefore, all of the Murray Controlled Group members are jointly and severally liable for the balance of Murray Energy's withdrawal liability.

---

[2] Murray Metallurgical Coal Holdings, LLC's direct subsidiaries are Maple Eagle Mining, LLC; Murray Alabama Minerals, LLC; Murray Maple Eagle Coal, LLC; Murray Alabama Coal, LLC; and Murray Oak Grove Coal, LLC.

30.     Apart from his ownership interest in the Non-Defendant Murray Controlled Group, Mr. Murray had broad business activities, described in Part II, that he conducted as a sole proprietorship, in partnership with Brenda Lou Murray, or through legal entities of which he owned a controlling interest.  Mr. Murray personally bought commercial real estate, many mineral rights, and land, and leased them, in multiple and varied transactions, to Non-Defendant Murray Controlled Group members and other companies.

31.     He personally and through legal entities entered into sophisticated debt finance transactions with Non-Defendant Murray Controlled Group members as a sole proprietorship.

32.     And, at times with his wife Brenda, he bought real estate, including mineral rights, and leased them as well.

33.     Mrs. Murray engaged in many transactions, operating as a sole proprietorship, in which she acquired and then leased real estate interests, including mineral rights, to the Non-Defendant Murray Controlled Group and other parties.

34.     As discussed below, when an individual who is the common parent of a "controlled group" carries on an unincorporated trade or business as a sole proprietor, he or she is jointly and severally liable for the controlled group's withdrawal liability.  Mr. Murray and the Estate of Mr. Murray, by virtue of his 100% ownership of Murray Holdings' voting stock, and Mrs. Murray, by virtue of the attribution of Mr. Murray's stock ownership of Murray Holdings to her, are the common parents of the Murray Controlled Group.  Because Mr. and Mrs. Murray also own unincorporated trades or businesses that are part of the Murray Controlled Group, they are jointly and severally liable for the controlled group liability. As Mr. Murray recently passed away, the Estate of Mr. Murray is now jointly and severally liable with Mrs. Murray and the other Murray Controlled Group members.

II.     **Chagrin Executive Offices, LLC and Any Unknown Legal Entities Owned or Controlled by Mr. and Mrs. Murray Other than Non-Respondent Murray Entities are Members of the Controlled Group and are Liable for Withdrawal Liability**

35.     Defendant Chagrin Executive Offices, LLC and any other trades or businesses currently unknown to the Plaintiffs that are members of the Murray Controlled Group are liable for Murray Energy's withdrawal liability to the 1974 Plan.

36.     First, Robert and Brenda Murray, who owned or are deemed to have owned a 100% interest in the voting stock of Murray Holdings and thus Murray Energy, owned and operated multiple trades or businesses.  For the reasons explained in Part III, those trades or businesses are members of the Murray Controlled Group and are jointly and severally liable for all controlled group withdrawal liability.   Second, the Murrays are personally liable for the debts, including withdrawal liability, of those trades or businesses that were sole proprietorships, partnerships or other entities without limited liability.

37.     ERISA mandates that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer."  ERISA Section 4001(b)(1), 29 U.S.C. § 1301(b)(1).  A group of trades or businesses under common control is generally referred to as a "controlled group."

38.     Regulations promulgated under ERISA Section 4001(b)(1), 29 U.S.C. § 1301(b)(1), have adopted by reference the Internal Revenue Service's regulations defining "trades or businesses under common control" found at 26 C.F.R. § 1.414(c)-1, *et seq.*  29 C.F.R. § 4001.3(a)(1).

39.     A "controlled group" includes a "parent-subsidiary group" consisting of a common parent and one or more chains of trades or businesses ("organizations") in which each organization except the common parent is directly or indirectly owned by one or more of the

other organizations and the common parent directly or indirectly owns a "controlling interest" in at least one of the other organizations.  Treas. Regs., §1.414(c)-2(b)(1).

40.     A "controlling interest" in a corporation is defined as ownership, directly or by attribution, of stock possessing at least 80 percent of either the voting power or total value of all classes of stock.  Treas. Regs., §1.414(c)-2(b)(2)(i)(A).

41.     Because a group of trades or businesses under common control is treated as a single employer for purposes of the Multiemployer Pension Plan Amendments Act, ERISA Section 4001(b)(1), 29 U.S.C. § 1301(b)(1), 29 C.F.R. §4001.3(a)(2), the employer that withdrew from the plan and all trades or businesses in the same controlled group are jointly and severally obligated to satisfy the withdrawn employer's withdrawal liability to the plan.

42.     As detailed below, Mr. Murray had a controlling interest in all entities (formal and informal) described herein sufficient to render all of them part of the Murray Controlled Group through his 100% ownership of Murray Holdings.

43.     On August 17, 2000, Mr. Murray formed Chagrin Executive Offices LLC, which is a member of the Murray Controlled Group by virtue of his ownership of a 100% membership interest.  Mr. Murray owned and controlled Chagrin at all relevant times.  On October 13, 2000, Chagrin borrowed $3.8 million from the Ohio Valley Coal Company Mine Closing Fund, a subsidiary of Murray Holdings.  On October 16, 2000, Chagrin purchased a property located at 29325 Chagrin Boulevard in Cleveland, Ohio.  Chagrin then leased the property back to Murray Energy and affiliated entities for use as office space.

44.     Any other unknown entities, incorporated or unincorporated, that were owned and controlled by the Mr. Murray or Mrs. Murray are also part of the Murray Controlled Group.

III.    **Robert and Brenda Murray Conducted Trades or Business as Sole Proprietorships or Partnerships, and Those Trades or Businesses Are Members of the Murray Controlled Group**

45.    Mr. Murray engaged in numerous trading and business activities with Non-Defendant Murray Controlled Group members. These activities constitute one or more trades or businesses that Mr. Murray conducted as a sole proprietor.

46.    Mr. Murray personally obtained mineral rights and leased them to other Non-Defendant Murray Controlled Group members.

47.    On January 18, 2017, Murray assigned rights to Non-Defendant Murray Controlled Group member Ohio American Energy, Inc.  On information and belief, there were many other instances of Murray leasing mineral rights to Non-Defendant Murray Controlled Group members.

48.    Mr. Murray also operated an unincorporated trade or business as a sole proprietor by leasing mineral rights to entities outside of the Murray Controlled Group, including, but not limited to, Gulfport Energy Corporation, Gulfport Appalachia, LLC, and Rice Drilling D, LLC.

49.    Mr. Murray and his wife Brenda Murray also operated an unincorporated trade or business through their joint purchase of real estate, which they then leased to other companies, including, without limitation, Gulfport Appalachia, LLC, Rice Drilling D LLC, and Gulfport Energy Corporation.

50.    Brenda Lou Murray, Robert Murray's widow and a Murray Holdings employee, is, like Mr. Murray, a parent of the Non-Defendant Murray Controlled Group.  Based on her marriage to Mr. Murray, her employment by Murray Holdings, and her participation in the management of Murray Holdings, she has common ownership, along with Robert Murray, of the entities within the Murray Controlled Group, and is the owner by attribution of all stock of Murray Holdings owned by Robert Murray.  Treas. Regs., §1.414(c)-4(b)(5).

51.     Since at least 2000, Mrs. Murray has operated an unincorporated trade or business through leases of rights and properties to, and numerous financial transactions with, members of the Non-Defendant Murray Controlled Group.  On or about May 10, 2005, Mrs. Murray leased a property to American Energy Corporation, a wholly owned subsidiary of Murray Energy Corporation.

52.     Mrs. Murray also engaged in an unincorporated trade or business through other oil and gas transactions, including, without limitation, in February 2020, when she entered into an oil and gas lease with Gulfport Appalachia LLC and in June 2018, when she entered into an assignment of lease with Rice Drilling D, LLC.

53.     Further, Mrs. Murray often entered into leases where she and Mr. Murray participated as either lessees or lessors, including, without limitation, with Gulfport Appalachia LLC in February 2018.

54.     Mrs. Murray also operated an incorporated trade or business through leasing to other parties' land from which oil and gas are extracted, including, without limitation entering into a Ratification of an Oil and Gas Lease with Gulfport Energy Corporation in April 2016.

**IV.     The Murray Controlled Group Incurred Substantial Withdrawal Liability**

55.     Under Section 4203 of ERISA, 29 U.S.C. § 1383, a complete withdrawal from a plan occurs when an employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan.

56.     Under Section 4201 of ERISA, 29 U.S.C. § 1381, a contributing employer is liable, following a complete withdrawal, for its proportionate share of the plan's unfunded vested pension liabilities, as determined under the rules adopted by the plan.

57.     Ordinarily, an employer that has withdrawn from a multiemployer plan is permitted to pay its withdrawal liability in installments.  ERISA Section 4219(c), 29 U.S.C. §1399(c).

58.     ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5) provides that a plan may accelerate the full amount of the employer's withdrawal liability, so that it becomes immediately due and owing upon a default, defined as the employer's failure to make timely payment of its required installments or the occurrence of any other event of default specified by rules adopted by the plan.

59.     Rules adopted by the Trustees of the 1974 Plan (the "Plan Rules") provide that a default occurs when, among other things, an employer: (i) becomes insolvent or (ii) files for bankruptcy. *See* Plan Rules, Additional Definitions of Default United Mine Workers of America 1974 Pension Plan (excerpt attached as Exhibit A).

60.     On October 29, 2019, Murray Energy filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in which it admitted insolvency.

61.     On April 11, 2020, Murray Energy filed a motion in the Bankruptcy Proceedings seeking authorization to reject its 2016 Collective Bargaining Agreement with the UMWA and modify its contractual obligations to provide certain healthcare and other post-employment benefits.

62.     The Bankruptcy Court granted Murray Energy's motion on May 7, 2020, triggering Murray Energy's withdrawal from the plan, effective on the Effective Date of the Plan of Reorganization of Murray Energy.

63.     The Plan of Reorganization confirmed the Court's earlier approval of withdrawal from the plan and absolved Murray Energy and all members of the Murray Controlled Group

that had filed for bankruptcy in that consolidated proceeding from any further obligation to pay

withdrawal liability to the 1974 Plan.  Nothing in any of the bankruptcy orders absolves

Mr. Murray, his estate, Mrs. Murray, or any other Non-Debtor Controlled Group members of any

responsibility for withdrawal liability.

64.     The Effective Date of the Plan of Reorganization was September 16, 2020, and on

that date the CBA was rejected, ending Murray Energy's CBA obligation to contribute to the

1974 Plan. All members of the Murray Controlled Group thus became jointly and severally liable

for its withdrawal liability.  Additionally, as of that same date, Murray Energy's operating assets

were transferred to newly-formed corporate entities, resulting in the permanent cessation of

covered operations under the 1974 Plan within the meaning of ERISA Section 4203(a)(2), 29

U.S.C. § 1383(a)(2).

65.     On October 9, 2020, the 1974 Plan received Murray Energy's final

contribution under the Wage Agreement for the period from September 1, 2020 through

September 15, 2020, in the amount of $393,232.45.

66.     Thus, a withdrawal from the 1974 Plan occurred, as defined in Section 4203 of

ERISA, 29 U.S.C. § 1383, resulting in withdrawal liability under Section 4201 of ERISA, 29

U.S.C. § 1381.

67.     Because an event of default occurred when Murray Energy became insolvent, and

again when it filed for bankruptcy protection, a state of default existed at the time of its

withdrawal, and the full amount of Murray Energy's withdrawal liability was immediately due

and owing at the time of the withdrawal, with no option to pay in installments.

68.     In response to the proof of claim for Murray Energy's withdrawal liability filed

by the 1974 Plan on March 5, 2020 against each of the debtors in the Murray Holdings'

consolidated bankruptcy proceedings, on September 16, 2020, the bankruptcy estates of those debtors paid the 1974 Plan the total sum of $2,686,791.91, an amount that does not satisfy the Murray Controlled Group's withdrawal liability. Any remaining liability of those members of the Group that were debtors in those consolidated bankruptcy proceedings was discharged by the bankruptcy court by order dated September 16, 2020.

69.     Murray Met, another entity that is part of the Murray Controlled Group and is jointly and severally liable for Murray Energy's withdrawal liability is a debtor in its own consolidated bankruptcy proceedings, and was discharged from that liability by the terms of its confirmed Chapter 11 Plan, which was approved by the Bankruptcy Court for the Southern District of Ohio on November 25, 2020.

70.     On March 2, 2021, assessments of withdrawal liability were sent to Mrs. Murray, to the Estate of Robert Murray and to Chagrin. The assessments demanded $6,512,516,970.09 payable in a lump sum. True and correct copies of withdrawal liability assessment letters sent to Defendants are attached as Exhibits B through D.

71.     Upon information and belief, Defendants do not intend to pay the withdrawal liability and intend to deny that the trades or businesses under their control, including those trades or businesses the obligations for which they are personally liable, were members of the Murray Controlled Group on the date of Murray Energy's withdrawal from the 1974 Plan.

### FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

72.     The 1974 Plan repeats and re-alleges each and every allegation in the preceding paragraphs as if set forth fully herein.

73.     Section 4301(a) of ERISA, 29 U.S.C. § 1451(a), provides that a plan fiduciary "who is adversely affected by the act or omission of any party under this subtitle [Subtitle E of

Title IV of ERISA, which contains the provisions of MPPAA] may bring an action for appropriate legal or equitable relief, or both."

74.    Because a group of trades or businesses under common control is treated as a single employer for purposes of MPPAA, the employer that withdrew from the plan and all trades or businesses in the same controlled group are jointly and severally obligated to satisfy the withdrawn employer's withdrawal liability to the plan.

75.    Unincorporated trades or businesses are also part of the controlled group.  An entity constitutes a trade or business if it engages in activity that is carried out with continuity and regularity and for the primary purpose of income or profit.  Alternatively, an entity, whether or not it meets the preceding criteria, is "categorically" engaged in a trade or business if it is a member of the same controlled group as the withdrawn employer and leases property to members of that controlled group.

76.    As set forth specifically in paragraphs 22 through 71 above, Mr. Murray and Mrs. Murray have carried on unincorporated trades or businesses that are part of the Murray Controlled Group.  As owners, they are therefore liable for withdrawal liability.  As Mr. Murray is now deceased, the Estate of Mr. Murray is liable for the withdrawal liability.

77.    Mr. and Mrs. Murray engaged, separately and jointly, in unincorporated trades or businesses through their personal business transactions, including leasing property to other members of the Non-Defendant Murray Controlled Group and non-controlled group members. Because Mr. Murray and Mrs. Murray themselves engaged in a trade or business and due to their common control of these unincorporated businesses and Murray Energy, all of their assets should be available to pay any withdrawal liability.   These include the assets that are now part of the Estate of Mr. Murray.

78.     Mrs. Murray and the Estate of Mr. Murray have failed to respond to the 1974 Plan's demand for payment of withdrawal liability and, on information and belief, do not admit that the trades or businesses that they own are members of the Murray Controlled Group.

79.     An actionable, ripe, justiciable controversy exists between the parties that the Court can resolve by declaring that Defendants are members of the Murray Controlled Group.

80.     Thus, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the 1974 Plan seeks a declaratory judgment that (i) Mr. and Mrs. Murray's leasing and other activities described in paragraphs 22 through 71 above were "trades or businesses" within the meaning of MPPAA, (ii) those trades or businesses were under common control with Murray Energy on September 16, 2020, (iii) as members of the Murray Controlled Group, those trades or businesses, Chagrin, and all currently unknown trades or businesses, incorporated or unincorporated, controlled by Mr. Murray, Mrs. Murray or both are jointly and severally liable for Murray Energy's withdrawal liability to the 1974 Plan, and (iv) Mrs. Murray and the Estate of Robert Murray are personally liable for the withdrawal liability of the unincorporated trades or businesses that they control.

## SECOND CAUSE OF ACTION
**(Withdrawal Liability Against Defendants the Personal Representative of the Estate of Robert E. Murray, Brenda Murray, Chagrin Executive Offices, LLC, and Unknown Incorporated or Unincorporated Entities Owned or Controlled by Robert Murray, Brenda Lou Murray or Both)**

81.     The 1974 Plan repeats and re-alleges each and every allegation in the preceding paragraphs as if set forth fully herein.

82.     Because a group of trades or businesses under common control is treated as a single employer for purposes of MPPAA, the employer that withdrew from the plan and all trades or businesses in the same controlled group are jointly and severally obligated to satisfy the withdrawn employer's withdrawal liability to the plan.

83.     In addition to those Defendants that are corporations or limited liability companies, unincorporated trades or businesses are part of the controlled group.  An entity constitutes a trade or business if it engages in activity that is carried out with continuity and regularity and for the primary purpose of income or profit, or that consists of leasing property.  An entity is also engaged in a trade or business if it is a member of the same controlled group as the withdrawn employer and leases property to members of that controlled group.

84.     As set forth specifically in paragraphs 22 through 71 above, Mr. Murray and Mrs. Murray each controlled unincorporated trades or businesses that are part of the Murray Controlled Group and therefore are liable for Murray Energy's withdrawal liability.

85.     The withdrawal liability of the unincorporated trades or businesses that Mr. Murray or Mrs. Murray, or both, controlled is their personal liability.  Therefore, all of their assets are available to satisfy Murray Energy's withdrawal liability to the 1974 Plan.  These assets include the assets that are now part of the Estate of Mr. Murray.

86.     The 1974 Plan has issued to the Defendants a notice and demand for payment of the Murray Controlled Group's withdrawal liability, which is now due and owing.  No Defendant has tendered any portion of the liability.  Therefore, the Defendants are liable, jointly and severally, for the total amount of the Murray Controlled Group's withdrawal liability, $6,512,516,970.09, plus accrued interest at the rate of three and one-quarter percent (3.25%) per year from May 1, 2021 (the due date of the withdrawal liability payment) until payment is made, liquidated damages, and attorney's fees and costs pursuant to ERISA Sections 502(g)(2)(A), 502(g)(2)(B), 502(g)(2)(C), 502(g)(2)(D), 515, and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), 1132(g)(2)(B), 1132(g)(2)(C), 1132(g)(2)(D), 1145, and 1451(b), the Trust Rules and the Trustees' binding interpretations thereunder, and the Plan Document (the "Judgment Amounts).

## PRAYER FOR RELIEF

WHEREFORE, the 1974 Plan respectfully requests that the Court enter judgment in its favor and against Defendants and award the 1974 Plan the following relief:

A.      A declaration that (i) Mr. and Mrs. Murray's leasing and other activities described in paragraphs 22 through 71 above were "trades or businesses" within the meaning of MPPAA, (ii) those trades or businesses were under common control with Murray Energy on September 16, 2020, (iii) as members of the Murray Controlled Group, those trades or businesses, Chagrin Executive Offices, LLC, and all currently unknown trades or businesses, incorporated or unincorporated, controlled by Mr. Murray, Mrs. Murray or both are jointly and severally liable for Murray Energy's withdrawal liability to the 1974 Plan, and (iv) Mrs. Murray and the Estate of Robert Murray are personally liable for the withdrawal liability of the unincorporated trades or businesses that they control; and

B.      An order that Defendants pay:

1.      The principal lump sum of $6,512,516,970.09;

2.      Interest, in accordance with ERISA § 502(g)(2)(B), 29 U.S.C. § 1132(g)(2)(B), at the rate of 3.25% per year on the amount principal

amounts of the withdrawal liability owed the 1974 Plan from May 1, 2021;

3.     Liquidated damages computed as provided in ERISA § 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(C), with respect to any of the preceding amounts that are not paid on or before May 1, 2021;

4.     Attorney's fees and costs in accordance with ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D); and

5.     Such other and further relief as the Court may deem just and proper in accordance with ERISA § 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E).


Dated: March 3, 2021                              Respectfully submitted,


                                                  */s/ Filiberto Agusti*
                                                  Filiberto Agusti (D.C. Bar No. 270058)
                                                  Paul Ondrasik (D.C. Bar No. 261388)
                                                  Sara Pikofsky (D.C. Bar No. 485948)
                                                  Joshua Taylor (D.C. Bar No. 486025)
                                                  Steptoe & Johnson LLP
                                                  1330 Connecticut Avenue, NW
                                                  Washington, DC 20036
                                                  (202) 429-6428 / Fax (202) 429-3902
                                                  E-Mail: fagusti@steptoe.com
                                                        pondrasik@steptoe.com
                                                        spikofsky@steptoe.com
                                                        jrtaylor@steptoe.com


                                                  MOONEY, GREEN, SAINDON, MURPHY &
                                                  WELCH, P.C.
                                                  Paul A. Green (D.C. Bar No. 383588)
                                                  John R. Mooney (D.C. Bar No. 375886)
                                                  Diana M. Bardes (D.C. Bar No. 1010075)
                                                  1920 L Street, N.W., Suite 400
                                                  Washington, D.C. 20036
                                                  Telephone: (202) 783-0010
                                                  E-mail: pgreen@mooneygreen.com

jmooney@mooneygreen.com
dbardes@mooneygreen.com

*Counsel for Plaintiffs*