UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHEAL W. BUCKNER *et al*,

    *Plaintiffs*,

v.

PERSONAL REPRESENTATIVE OF THE ESTATE OF ROBERT E. MURRAY *et al*,

    *Defendants*.

Civil Action No. 21-567 (TJK)

## MEMORANDUM OPINION

Plaintiffs allege they are the trustees of the United Mine Workers of America 1974 Pension Plan and Trust, a pension plan that provides retirement benefits to tens of thousands of retired coal miners and their surviving spouses. They claim that Defendants owe the trust roughly $6.5 billion because of Defendants' corporate relationships with Murray Holdings, a large privately-owned coal company that filed for bankruptcy, thus allowing it to withdraw from a collective bargaining agreement requiring contributions to the plan. Defendants move to dismiss. They assert, among other things, that Plaintiffs cannot bring suit on behalf of the plan. As explained below, the Court agrees, and so it will grant the motions and dismiss the case.

**I.    Background**

    **A.    Factual Background**

The United Mine Workers of America 1974 Pension Plan and Trust ("the Plan") is a multiemployer, employee-pension-benefit plan under the Employment Retirement Income Security Act of 1974 ("ERISA"). ECF No. 46 ¶¶ 14–15. It is an industry-wide pension plan established by the United Mine Workers of America and the Bituminous Coal Operators' Association, Inc., and it provides retirement benefits to tens of thousands of retired coal miners and their surviving

spouses. *Id.* ¶ 16.

Plaintiffs are Micheal Buckner and Joseph R. Reschini—both of whom, according to the Amended Complaint, are trustees of the Plan.[1] ECF No. 46 ¶ 17. As alleged, Buckner is a trustee appointed by the United Mine Workers of America, while Reschini is a trustee appointed by the Bituminous Coal Operators' Association. *Id.* Plaintiffs allege that Reschini was appointed to address issues related to Murray Holdings' bankruptcy, because the two trustees appointed by the employers recused themselves with respect to those matters. *Id.* Plaintiffs sue the Estate of Robert Murray, Brenda Murray, Chagrin Executive Offices, LLC, and other unknown trades and businesses under the control of Robert and/or Brenda Murray. Before his death, Robert Murray was the Chairman, President, CEO, and primary equity owner of Murray Holdings. ECF No. 46 ¶¶ 2, 20–21. Brenda Murray is Robert Murray's widow, and Chagrin Executive Offices is a limited liability company created and owned by Robert Murray. *Id.* ¶¶ 22–23. Plaintiffs tie Defendants to the Plan based on their alleged connections to Murray Holdings. *Id.* ¶ 6.

Murray Holdings was the largest privately-owned coal company in the United States, employing thousands of United Mine Workers of America members. ECF No. 46 ¶ 24. In October 2019, Murray Holdings and many of its subsidiaries and affiliates filed for bankruptcy. *Id.* Several of those subsidiaries were signatories to a collective bargaining agreement that required them to contribute to the Plan. *Id.* ¶ 25. As part of the bankruptcy proceedings, Murray Holdings and its subsidiaries were allowed to withdraw from the Plan and stop contributing to it. *Id.* ¶¶ 79–80. Their withdrawal became effective in September 2020 and triggered an obligation to pay withdrawal liability. *Id.* ¶ 82. The withdrawing entities themselves paid a fraction of that liability, and

---

[1] Michael H. Holland, a trustee and named plaintiff in the original complaint, has since retired, and is therefore not named as a plaintiff in the Amended Complaint. ECF No. 46 at 2 n.1.

$6.5 billion remains outstanding. *Id.* ¶¶ 37, 86–87. But under ERISA, withdrawal liability is not limited to the withdrawing signatories but extends to all trades and businesses "which are under common control" with those entities. *Id.* ¶¶ 57–58, 84; *see also* 29 U.S.C. § 1301(b)(1). Plaintiffs assert that Defendants are all "under common control" with the Murray Holdings signatory subsidiaries that withdrew and are therefore jointly and severally liable for the withdrawal liability incurred by those subsidiaries.[2] *Id.* ¶ 6.

### B. Procedural History

This suit was originally brought in March 2021. In response to issues raised by Defendants in several motions to dismiss, the Court permitted Plaintiffs to amend their complaint in May 2023. In the Amended Complaint, Plaintiffs sue "in their capacity as Trustees and as fiduciaries on behalf of the 1974 Plan" under Sections 4301(a)(1) and 502(a)(3)(B)(ii) of ERISA—both of which permit a plan participant, beneficiary, or fiduciary to bring a civil action. ECF No. 46 ¶ 19; *see also* 29 U.S.C. §§ 1132(a)(3)(B)(ii), 1451(a)(1). They seek a declaratory judgment establishing that Defendants are "under common control" with the Murray Holdings signatory subsidiaries and are jointly and severally liable for $6.5 billion in withdrawal liability. *Id.* 46 ¶¶ 7, 95–105. They also seek an order compelling Defendants to pay their withdrawal liability obligations. *Id*. ¶¶ 106–111. Defendants each moved to dismiss on various jurisdictional and merits grounds, including that Plaintiffs lack the capacity to sue. ECF Nos. 48, 49, 50.

## II. Legal Standard

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it

---

[2] The Amended Complaint recognizes that Robert and Brenda Murray are not themselves a "trade or business," but it alleges that they are "personally liable for the debts of their unincorporated trades or businesses that they owned and conducted as sole proprietorships or partnerships"—several of which were "under common control" with the withdrawing signatories. ECF No. 46 ¶ 72.

3

does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). But a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "While a court generally does not consider matters beyond the pleadings for a motion to dismiss, it may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'" *Feng Wang v. Pompeo*, No. 18-cv-1732 (TSC), 2020 WL 1451598, at *3 (D.D.C. Mar. 25, 2020) (citation omitted). A court may also consider matters of which it can take judicial notice. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).[3]

---

[3] Defendants argue that because Plaintiffs fail to establish their capacity to sue, their claims should be "dismissed for lack of jurisdiction" under Federal Rule of Civil Procedure 9(a). ECF No. 48-1 at 33. But the issue is not jurisdictional, and courts typically resolve it by applying a Rule 12(b)(6) standard. As mentioned, Defendants raise this as a lack of capacity to sue issue under Rule 9(a). The capacity to sue inquiry is about "whether [a] party is entitled to enforce a particular right through litigation." *See United Supreme Council v. United Supreme Council*, 792 F. App'x 249, 255 (4th Cir. 2019). ERISA provides the cause of action here. As a result, the capacity to sue question resembles what is sometimes called "statutory standing," which asks whether a particular plaintiff may sue under a specific statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). And statutory standing is not a question of subject matter jurisdiction. *See Lexmark Int'l, Inc.*, 572 U.S. 128 n.4 (explaining that while "statutory standing" has been treated as "effectively jurisdictional," it "does not implicate subject-matter

**III.    Analysis**

For the reasons explained below, the Court agrees with Defendants that Plaintiffs lack the capacity to bring this suit. Thus, it need not address the other arguments raised in Defendants' motions, and it will grant the motions and dismiss the case.[4]

ERISA only permits certain classes of persons to bring civil actions; that list includes a "plan fiduciary, employer, plan participant, or beneficiary." 29 U.S.C. §1451(a)(1); *see also id.* § 1132(a)(3) ("A civil action may be brought . . . by a participant, beneficiary, or fiduciary."). And as for employee benefit plans—such as the 1974 Pension Plan and Trust—the statute also sets out who are the named fiduciaries. It provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument[]" and that "[s]uch instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." *Id.* § 1102(a)(1). ERISA authorizes plan fiduciaries to bring civil actions, but it requires that any action taken by a fiduciary must be "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]." *Id.* § 1104(a)(1)(D). Plaintiffs claim to sue "as fiduciaries on behalf of the 1974 Plan." ECF No. 46 ¶ 19. Thus, Plaintiffs must establish both that they are fiduciaries

---

jurisdiction"); *see also United Supreme Council*, 792 F. App'x at 255 (holding that a party's lack of capacity to sue does not deprive a federal court of Article III jurisdiction); *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 65 (D.D.C. 2015) (collecting cases). Thus, because these challenges are non-jurisdictional, courts generally permit them to be raised in a Rule 12(b)(6) motion and review them under that standard. *See John Doe v. Metro. Police Dep't of D.C.*, 445 F.3d 460, 466–67 (D.C. Cir. 2006) (holding that whether a complaint states a cause of action is considered under 12(b)(6)); *Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294, 296 n.1 (2d Cir. 1965) ("Although the defense of lack of capacity is not expressly mentioned in rule 12(b), the practice has grown up of examining it by a 12(b)(6) motion when the defect appears upon the face of the complaint.").

[4] Importantly, the Court need not address the argument that it lacks subject-matter jurisdiction because it has already rejected it. *See* ECF No. 44.

under the Plan and that this action was taken in accordance with the Plan's Trust Agreement.

The Plan's Trust Agreement sets out terms that govern its fiduciaries and describes how they may take action on behalf of the Plan.[5] The Agreement creates a "Board of four Trustees," two of whom are appointed as representatives of the employers and two of whom are appointed as representatives of the union. ECF No. 48-6 at 3. And it defines these trustees as "the named fiduciaries" under ERISA. *Id.* Although these four trustees are the only named fiduciaries established in the Agreement, it also allows "that this instrument may be amended pursuant to Article XI hereof to designate other or additional named fiduciaries." *Id.* Article II of the Agreement further provides a mechanism by which the employers or the union may appoint a "successor" trustee. Under that provision, "[i]n the event of resignation, death, removal, inability or unwillingness to serve of a Trustee appointed by the Employers or a Trustee appointed by the Union, the Employers shall appoint the successor of the Trustee originally appointed by them . . . and the Union shall appoint the successor of the Trustee originally appointed by it." *Id.* at 2–3. The Agreement also instructs that "[f]or the purposes of taking any action and all other aspect of administration under the [Plan], a quorum shall consist of two of the four Trustees, one of whom must be a representative of the Union, and one of whom must be a representative of the Employers . . . ." *Id.* In other words, for the trustees to act on behalf of the Plan, that action must be agreed to by one of the two union trustees and one of the two employer trustees.

The parties do not dispute that Buckner is a trustee appointed to represent the union. But Defendants argue that Reschini is not properly appointed as an employer trustee. Thus, according

---

[5] The Court takes judicial notice of the Trust Agreement as a public document from a reliable source. *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014). Plaintiffs also cite it themselves, ECF No. 53 at 13, and have not objected to the Court doing so, *Democracy Forward Found. v. White House Off. of Am. Innovation*, 356 F. Supp. 3d 61, 62 n.2 (D.D.C. 2019).

to Defendants, this suit has not been agreed to by both a union trustee and an employer trustee, and so it has not been authorized under the Trust Agreement as required under ERISA.[6] The Court is compelled to agree with Defendants. As explained below, Reschini could not authorize this suit as an employer-appointed trustee because he was not properly appointed as such under the Trust Agreement.[7]

According to the Amended Complaint, Reschini was appointed by the employers as a trustee, but only "for the purpose of addressing 1974 Plan matters related to the Murray Holdings' bankruptcy, including any resultant withdrawal liability," and only after the two original employer-appointed trustees recused themselves on such matters. ECF No. 46 ¶ 17. As a result, the Amended Complaint does not allege—nor do Plaintiffs claim—that Reschini was one of the two trustees originally appointed to represent the employers under the Trust Agreement. Nor do they assert that he was added as an "additional named fiduciary" via an amendment under Article XI of

---

[6] At least potentially, there is tension between ERISA's authorization for fiduciaries to sue and the Trust Agreement's limitation that no single fiduciary can do so without agreement between a union and an employer appointed trustee. Still, whatever tension exists is likely resolved by ERISA's requirement that fiduciaries must act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). And courts in other jurisdictions have held that similar limitations imposed by a trust agreement are consistent with ERISA. *See Kilkenny v. Guy C. Long, Inc.*, 288 F.3d 116, 124 (3d Cir. 2002) (quoting *Alfarone v. Bernie Wolff Const. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986)) ("The limitation in the trust agreements on the powers and duties of less than a majority of the trustees under the instant plans is consistent with the power granted fiduciaries to bring a civil suit under ERISA."). But because Plaintiffs do not dispute that their capacity to sue here hinges on whether Reschini is a properly appointed employer trustee, the Court need not address this issue.

[7] The Court does not decide whether Reschini is a "fiduciary" for ERISA purposes. ERISA "does not limit fiduciary status to the fiduciaries named in a plan document." *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 357 n.6 (4th Cir. 2014) (citing 29 U.S.C. § 1002(21)(A)). But even if Reschini is a fiduciary, this suit must still be brought in accordance with the Trust Agreement, which requires the assent of both a union-appointed and employer-appointed trustee. Thus, to resolve the instant motion, it is sufficient for the Court to find that Reschini was not properly appointed as an employer trustee under the Agreement.

7

the Agreement. Instead, Plaintiffs rely on Paragraph 4 of Article II, which authorizes the employers to "appoint the successor of the Trustee originally appointed by them." ECF No. 48-6 at 3; *see also* ECF No. 53 at 20.

The problem for Plaintiffs is that Reschini was not, in fact, appointed as a "successor" trustee to replace either of the trustees originally appointed by the employers. In fact, those trustees apparently remain in their roles on the Board of Trustees. Rather, as Plaintiffs concede, Reschini was appointed as an "alternate" trustee only for the purpose of addressing matters relating to the Murray Holdings' bankruptcy. ECF No. 53 at 20. But nothing in the Trust Agreement authorizes the appointment of an "alternate" trustee or suggests that trustees may be temporarily appointed for limited purposes. Moreover, Reschini's appointment is based on the recusal of the two employer-appointed trustees on matters relating to the Murray Holdings' bankruptcy. ECF No. 46 ¶ 17. But nothing in the Agreement provides for trustee recusal either. In sum, nothing in the Agreement appears to allow the entire course of conduct that led to Reschini's purported appointment as a trustee.

The definition of the term "successor" bolsters that conclusion. True, the Supreme Court has cautioned that there is "no single definition of 'successor' which is applicable in every legal context." *Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL-CIO*, 417 U.S. 249, 262 n.9 (1974).[8] But under these circumstances, the terms "successor" and "alternate" are not the same. A "successor" is someone "who takes the place that another has left." *Safer v. Perper*, 569 F.2d 87, 95 (D.C. Cir. 1977); *see also* "Successor," *Oxford*

---

[8] In interpreting the terms of a trust instrument, "[t]he duty of a court is to construe a trust instrument as written." *Robinson v. United States*, 632 F.2d 822, 826 (9th Cir. 1980); *see also Petition of U. S. on Behalf & for Benefit of Smithsonian Inst.*, 485 F. Supp. 1222, 1236 (D.D.C. 1980) ("As to any matter expressly covered by the instrument, the provisions of the instrument, if unambiguous, determine the terms of the trust.").

*English Dictionary*, (July 2023), https://www.oed.com/dictionary/successor_n?tab=meaning_and_use#19811165 (someone "who succeeds another in an office, dignity, function, or position"); "Successor," *Black's Law Dictionary* (11th ed. 2019) ("Someone who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor."). By contrast, an "alternate" does not take over a position but merely "acts or is available to act as a substitute or stand-in for another." Alternate, *Oxford English Dictionary*, (Sept. 2023), https://www.oed.com/dictionary/alternate_adj?tab=meaning_and_use#6040284. Thus, because both original employer-appointed trustees remain in their roles, Reschini can hardly be their successor. And it is telling that despite Plaintiffs' insistence that the "successor" provision in the Trust Agreement covers Reschini's appointment, they never refer to him using that term. That underscores their effort to fit the round peg of an "alternate" into the square hole of a "successor."

Other language in the "successor" provision confirms this reading of the Trust Agreement. The Agreement lists the following set of conditions that might require the appointment of a successor trustee: "resignation, death, removal, inability or unwillingness to serve." ECF No. 48-6 at 3. Plaintiffs argue that an inability or unwillingness to serve could be temporary and suggest that a successor trustee may likewise be for a limited time. Maybe. But the first three conditions clearly denote a permanent condition, which suggests that "inability or unwillingness to serve" is also meant to describe one—and that, therefore, a "successor" must be a permanent replacement. *See Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) ("[W]ords grouped in a list should be given related meaning.") (internal quotations omitted). It is also far from clear that, even standing alone, an "inability or unwillingness to serve" would cover a temporary conflict of interest. To be sure, a conflict of interest could be conceived of as an inability or unwillingness to serve, but given that trustees are expected to "overcome any loyalty to the interest of the party that

appointed [them]," *N.L.R.B. v. Amax Coal Co., a Div. of Amax*, 453 U.S. 322, 334 (1981), it seems likely that the phrase was intended to cover a permanent inability or unwillingness, not a temporary conflict.[9]

Finally, the Trust Agreement's overall structure confirms that a "successor" trustee is not an "alternate." The Agreement creates a limited number of trustee positions—two for the employers and two for the union. It would contradict that limit to read into the Agreement a hidden authority to appoint additional trustees as "successors." And that is all the more so because the Agreement *does* provide a mechanism by which additional named fiduciaries—including, presumably, additional trustees—may be named. According to the Agreement, "this instrument may be amended pursuant to article XI hereof to designate other or additional named fiduciaries." ECF No. 48-6 at 3.

Plaintiffs make two other attempts to circumvent this straightforward interpretation of the Trust Agreement. First, they argue that because the Amended Complaint alleges that Reschini is an employer-appointed trustee under the plan, and because the Court must accept well-pleaded factual allegations as true at the motion to dismiss stage, that should end the Court's inquiry. ECF No. 53 at 19–20. Not so. "Although a court must accept all well-pleaded factual allegations, it need not accept legal conclusions." *Campaign Legal Ctr. v. Fed. Election Comm'n*, No. 22-cv-3319 (CRC), 2023 WL 6276634, at *6 (D.D.C. Sept. 26, 2023) (citing *Browning*, 292 F.3d at 242). Here, the Court accepts the relevant facts alleged in the Amended Complaint. Indeed, neither party disputes them. ECF No. 46 ¶¶ 17–18. But whether Reschini may authorize this suit under the

---

[9] Plaintiffs suggest that discovery is necessary to determine whether the original employer-appointed trustees' conflict of interest constitutes an "inability or unwillingness to serve." ECF No. 53 at 21. Discovery is unnecessary. The Court makes no factual findings on this point, and its interpretation of the Trust Agreement does not turn on any contested fact for which discovery would be appropriate.

Trust Agreement is a legal conclusion reserved for the Court. *See Plan Comm. v. PricewaterhouseCoopers, LLP*, No. 02-cv-01487 (TFH), 2007 WL 1191917, at *8 (D.D.C. Apr. 20, 2007) (citing *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996)) (emphasizing distinction between allegations of fact and legal conclusions drawn from those facts about whether trustee plaintiffs have standing).

Second, Plaintiffs fall back on the argument that no matter how the Trust Agreement is *best* interpreted, under Supreme Court precedent, the Court must defer to the trustees' reasonable interpretation of their own documents. ECF No. 53 at 21 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)).  It is true that in *Firestone Tire & Rubber Co*, the Supreme Court held that when a trustee is "given power to construe disputed or doubtful terms, . . . the trustee's interpretation will not be disturbed if reasonable," 489 U.S. at 111, and that the Trust Agreement here does grant the trustees the "discretionary power to construe the provisions of this Agreement[,]" ECF No. 48-6 at 5.  However, the Supreme Court expressly limited that holding to actions brought under Section 1132(a)(1)(B) by a participant or beneficiary challenging the denials of benefits. *Firestone Tire & Rubber Co*, 489 U.S. at 108.  This action was not brought under that provision, was not brought by a participant or beneficiary, and is not challenging the denial of benefits, and so the deferential *Firestone Tire & Rubber Co* standard does not apply.  On top of that, it would make no sense to apply such deference here, when the whole dispute is about whether Reschini *is in fact* a trustee who may authorize this suit.

*       *       *

Because the Court finds that Reschini was not properly appointed as a trustee under the

11

Trust Agreement, he could not authorize this ERISA suit. Thus, it must be dismissed.[10] The dismissal will be without prejudice, so that duly-appointed trustees of the Plan acting under the Trust Agreement remain free to re-bring it. *See Asbestos Workers Syracuse Pension Fund by Collins v. M.G. Indus. Insulation Co.*, 875 F. Supp. 132, 142 (N.D.N.Y. 1995); *cf. Johns v. Cnty. of San Diego*, 114 F.3d 874, 878 (9th Cir. 1997) (explaining that dismissal for lack of capacity to sue is without prejudice and a proper party may refile the action).

## IV. Conclusion

For all the above reasons, the Court will grant Defendants' motions to dismiss. A separate order will issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: March 30, 2024

---

[10] Defendants also argue that Plaintiffs cannot sue because, with the retirement of Holland as a union trustee, the Plan lacks a quorum for this litigation. In light of the Court's conclusion that Reschini could not authorize this suit as an employer-appointed trustee because his appointment did not comply with the terms of the Trust Agreement, it need not consider this alternative argument.